UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWN C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:22-cv-00431-TWP-TAB |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Dawn C. appeals the Social Security Administration's denial of her application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge failed to properly evaluate her subjective symptom statements and her residual functional capacity, particularly as it related to her migraine headaches and hypersomnolence.  However, the ALJ's findings were supported by substantial evidence.  Furthermore, Plaintiff identifies no reversible error in the ALJ's RFC assessment or in evaluating her subjective symptoms.  Accordingly, Plaintiff's request for remand should be denied.  [Filing No. 11.]

**II.     Background**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on August 6, 2018. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2018, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: torn right rotator cuff and right shoulder osteoarthritis, torn meniscus and bilateral osteoarthritis of the knees, status-post hysterectomy with pelvic floor dysfunction, vertigo, bilateral carpal tunnel syndrome, obesity, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD). [Filing No. 7-2, at ECF p. 23-24.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [Plaintiff] could occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds. [Plaintiff] can stand and walk for a total of about two hours in an eight-hour workday, and she can sit for a total of about six hours in a workday. [Plaintiff] can occasionally climb ramps and stairs, and she can occasionally balance, stoop, and crouch, but she cannot climb ladders, ropes, or scaffolds, and she cannot crawl or kneel. With her right arm, [Plaintiff] can frequently reach laterally and in front, and she can occasionally reach overhead. She cannot be exposed to vibration, hazardous machinery, or unprotected heights.

> [Plaintiff] must use a cane for walking, and she can carry as much as five pounds in her contralateral upper extremity when walking with the cane. She can perform simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions. [Plaintiff] can tolerate few workplace changes, and she can tolerate only occasional interaction with the public, with coworkers, and with supervisors.

[Filing No. 7-2, at ECF p. 26.] At step four, the ALJ concluded that Plaintiff could not perform past relevant work. Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, including address clerk, document preparation clerk, and inspector. [Filing No. 7-2, at ECF p. 33.] Accordingly, the ALJ concluded that Plaintiff was not disabled. On January 18, 2022, the Appeals Council reviewed the ALJ's decision and issued another unfavorable decision adopting the ALJ's findings. [Filing No. 7-2, at ECF p. 3.]

### III. Discussion

Plaintiff argues that the ALJ erroneously evaluated her subjective symptoms, failed to discuss the impact of her migraines on her ability to perform, and omitted any consideration of hypersomnolence. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ

3

concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

      **A.**      **Subjective symptom evaluation**

Plaintiff claims that the ALJ erroneously assessed her subjective symptoms. [Filing No. 11, at ECF p. 15.] The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 7-2, at ECF p. 27.]

As noted above, the ALJ concluded Plaintiff could perform sedentary work, with many additional limitations. However, Plaintiff argues that the ALJ's entire discussion as it relates to SSR 16-3p was confined to one conclusory paragraph, where the ALJ stated:

> The undersigned finds the above [RFC] adequately accounts for the claimant's alleged impairments. The undersigned has considered [Plaintiff's] statements regarding the intensity, persistence, and limiting effects of their symptoms in accordance with SSR 16-3p. [Plaintiff] reported she is able to sort laundry and go

4

> out grocery shopping. In her December 2019 consultative exam, [Plaintiff] reported she was able to help her daughter get ready for school and do her homework. Consideration of the factors set forth in SSR 16-3p, including [Plaintiff's] wide range of reported activities from her testimony and function reports, the repeated reports of improved knee pain following her surgery, and the reports of improved pelvic pain following her injections, indicate the reported intensity, persistence, and limiting effects of [Plaintiff's] symptoms are inconsistent with [the] record as a role.

[Filing No. 7-2, at ECF p. 31.]

Plaintiff argues that the ALJ improperly considered Plaintiff's ability to sort laundry, grocery shop, help her daughter get ready for school, and help her daughter with homework to be a "wide range" of activities. [Filing No. 11, at ECF p. 16.] Plaintiff claims that the ALJ overstated the extent of Plaintiff's daily activities and failed to properly acknowledge the qualified way in which she carried out those activities, such as that her mother goes to the grocery store most of the time and her mother and daughter do most of the household chores. In addition, Plaintiff uses a motorized cart at the grocery store. [Filing No. 11, at ECF p. 17.] Plaintiff argues that the ALJ failed to explain how the ability to do these daily activities undermines Plaintiff's alleged limitations.

The Commissioner argues that the ALJ, and by extension the Appeals Council, offered a reasonable basis, supported by substantial evidence, for the assessment of Plaintiff's RFC. [Filing No. 14, at ECF p. 8.] The Commissioner concedes that the ALJ did not explicitly acknowledge some of Plaintiff's statements about the limitations on her daily activities in the decision. However, the Commissioner argues that the ALJ's omission does not warrant remand given her reasonable analysis of the medical evidence about Plaintiff's medical treatment. [Filing No. 14, at ECF p. 19.] In addition, the Commissioner argues that it is sufficient that the ALJ asked Plaintiff about her activities at the hearing and heard Plaintiff's testimony about the

5

fact that her daughter helped her with activities and her allegation that those activities were often performed on a limited basis. [Filing No. 14, at ECF p. 19.]

The Court is limited to a review of the ALJ's decision and whether that decision reflects a logical bridge from the evidence to the ALJ's conclusions. *See, e.g., Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The ALJ need not recite every single piece of evidence. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) ("An ALJ need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions. The Court will not reweigh the evidence or substitute its judgment for that of the ALJ." (Internal citations, quotation marks, and brackets omitted)). Rather, the ALJ's analysis simply needs to provide enough detail to permit the Court to conduct a meaningful review.

Plaintiff accurately points out that the ALJ's decision does not address the qualified way Plaintiff performed daily activities. The fact that the ALJ presumably heard Plaintiff's testimony at the hearing is not enough; the ALJ must accurately recite that testimony, as well as other evidence presented, in her decision and connect it to her conclusions. Thus, this argument from the Commissioner is unavailing. However, the standard for evaluating the ALJ's subjective symptom evaluation is high. An ALJ's assessment should not be overturned unless it is patently wrong. *See, e.g., Wilder*, 22 F.4th at 653 ("This Court will uphold an ALJ's credibility determination unless that determination is patently wrong." (Internal citation and quotation marks omitted)). Furthermore, discrepancies between a claimant's testimony about her limitations and the medical record can support an ALJ's decision to assign the claimant's testimony reduced weight. *See, e.g., Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) (noting medical records did not support the plaintiff's testimony regarding frequency or effect of migraines and fainting episodes).

The ALJ spent several pages of her decision documenting her consideration of the medical evidence about Plaintiff's impairments, and the treatments that Plaintiff received, including her surgeries. The ALJ's decision demonstrates that she found the record to be inconsistent with several of Plaintiff's allegations about the severity of her symptoms. For example, the ALJ noted that the objective medical evidence failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. The ALJ referenced Plaintiff's torn right rotator cuff from a November 2018 fall at an ice skating rink and subsequent operation to repair it. [Filing No. 7-2, at ECF p. 27.] An x-ray almost a year later showed mild joint space narrowing with mild degenerative changes, without evidence or fracture or dislocation. Plaintiff reported her right shoulder pain was only a 4 out of 10 at a November 2019 physical therapy treatment, and at a December 2019 exam all range of motion for each shoulder was normal. [Filing No. 7-2, at ECF p. 27.] The ALJ thoroughly considered the record evidence related to this and other alleged impairments. The ALJ concluded that while the record supported significant limitations on Plaintiff's functioning, it did not support the conclusion that Plaintiff could not work at all.

Additionally, the Commissioner argues that even if the Court concludes that the ALJ should have said more about the limited fashion in which Plaintiff stated she performed her activities, it still should not remand the matter. In support, the Commissioner contends that the ALJ provided a supported account of her consideration of the record evidence—including the medical opinion evidence—and adequately explained why she believed Plaintiff could still perform simple, sedentary work. [Filing No. 14, at ECF p. 19.] For instance, the ALJ cited Plaintiff's report that she experienced pain in her legs that prevented her from standing for long periods, but the ALJ noted examinations sometimes showed Plaintiff to have a normal gait and

7

often showed she had full motor strength and no muscle atrophy. [Filing No. 7-2, at ECF p. 27-28.] It was reasonable for the ALJ to consider that the record clashed, at least in part, with the severity of limitation that Plaintiff alleged. Similarly, Plaintiff testified at the hearing that she could lift a gallon of milk with her left hand, but not her right. [Filing No. 7-3, at ECF p. 16.] Yet the ALJ noted that while Plaintiff was treated for bilateral wrist numbness and pain from carpal tunnel syndrome and was prescribed wrist braces, her neurological examinations were normal and showed intact sensation and normal movement of her upper extremities. [Filing No. 7-2, at ECF p. 29.]

Plaintiff also takes issue with the ALJ's reference to "repeated reports of improved knee pain following her surgery, and the reports of improved pelvic pain following her injections" as indicative of inconsistences between Plaintiff's reported intensity, persistence and limiting effects of her symptoms with allegations of disabling symptoms. [Filing No. 11, at ECF p. 19.] Plaintiff points out that a positive response to treatment is not, by itself, inconsistent with allegations of disabling symptoms. *See, e.g., Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("Meuser further contends that the ALJ overstated both the effectiveness of his medication and the extent of his daily activities . . . But there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." (Internal citations, quotation marks, and brackets omitted)). Plaintiff goes on to cite conflicting evidence in the record of both improvements in knee pain and pelvic pain after surgery and injections, respectively, but also worsening and returning pain. [Filing No. 11, at ECF p. 20-21.] Thus, Plaintiff argues that the ALJ mischaracterized the evidence in simply stating that her pain "improved" and undercut her statements of disabling pain and limitation of function.

However, while the ALJ's decision does not cite every record Plaintiff references, the decision does reflect a not completely linear healing process. The ALJ noted Plaintiff's complaints of bilateral knee pain and that with a cane her gait was steadier, though with a slight limp. [Filing No. 7-2, at ECF p. 28.] The ALJ also addressed the report of Plaintiff being able to walk her daughter to the corner on her way to school. Plaintiff noted that she attended nine sessions of physical therapy and that when she was discharged, she was noted to have progressed well and met all but two goals; the ALJ also referenced Plaintiff's physical therapy treatment and overall knee function improvement in late 2020. The ALJ also referenced Plaintiff's January 2021 treatment, though without the same detail as Plaintiff provides in her brief on appeal. [Filing No. 7-2, at ECF p. 28.] Thus, the ALJ failed to specifically note Plaintiff's report that her left knee was doing better than her right, but she was experiencing relatively daily bilateral knee pain that was worse with prolonged activity, and difficulty standing for long periods of time due to her knee pain. [Filing No. 8-36, at ECF p. 33.] However, at that time Plaintiff denied any mechanical symptoms, and stated it was more of a soreness. [Filing No. 8-36, at ECF p. 33.] Similarly, the ALJ generally recited Plaintiff's pelvic pain and treatment history. [Filing No. 7-2, at ECF p. 28.] While the ALJ did not specifically touch on her pelvic floor physical therapy, she did reference Plaintiff receiving vaginal trigger point injections and that they helped with her pain.

Overall, the ALJ accurately reflected Plaintiff's medical history and complaints of knee and pelvic pain. The Court cannot reweigh the evidence. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Furthermore, Plaintiff fails to tie the alleged error to actual harm. Plaintiff has not suggested any additional limitations the ALJ should have included because she was still having knee and pelvic pain. The ALJ limited Plaintiff to sedentary work, with additional

restrictions, including the use of a cane for walking. [Filing No. 7-2, at ECF p. 26.] Plaintiff does not tie the alleged errors in the ALJ's decision to any additional suggested limitations that the ALJ omitted.

Finally, Plaintiff argues that the ALJ failed to develop the record concerning the side effects of medications Plaintiff was taking. [Filing No. 11, at ECF p. 22-24.] Plaintiff claims that the ALJ did not address the fact that she alleged some of the medications may have made her sleepy. Plaintiff is correct that the ALJ does not address this in her decision. However, Plaintiff has not shown that she was harmed by the omission. Plaintiff does not explain how her subjective reports of side effects mandated a finding of disability, nor has she even identified any specific functional limitation that the record demanded and the ALJ omitted. Instead, Plaintiff relies solely on her own allegation that her medications caused her to be sleepy. Plaintiff points to no evidence indicating that any physician corroborated that view or expressed any opinion that alleged side effects caused work-related limitations. Thus, Plaintiff's argument for remand comes up short.

### B.     Migraines and hypersomnolence

Plaintiff also argues that the ALJ failed to properly discuss the impact of her arguably severe migraines and headaches on her ability to perform and maintain employment. [Filing No. 11, at ECF p. 25.] The ALJ concluded that Plaintiff's migraine headaches were a non-severe impairment. [Filing No. 7-2, at ECF p. 24.] The Appeals Council adopted the ALJ's findings at step two, specifically noting the severe impairments, but made no mention of the non-severe impairments. [Filing No. 7-2, at ECF p. 6-7, 9.] Plaintiff claims that the ALJ dismissed the severity of Plaintiff's migraines in one brief sentence, without any discussion of how and why

10

these migraines would not prevent Plaintiff from being able to maintain employment. [Filing No. 11, at ECF p. 26.]

The Commissioner claims that the record indicates that the ALJ was aware of Plaintiff's allegations because she testified about them at the hearing before the ALJ. The Court rejected a similar argument above. The ALJ must provide a logical bridge between the evidence and her conclusions in her decision. *Gedatus*, 994 F.3d at 900. The Commissioner cites to no case law holding that the ALJ need not reference a plaintiff's subjective complaints when that plaintiff testified about something at the hearing before the ALJ. Nor does the Commissioner provide any support for this idea that the Court should infer that the ALJ considered a plaintiff's hearing testimony when the ALJ's decision does not reflect any consideration or analysis of a portion of the testimony. Accordingly, this argument is once again unsuccessful.

However, Plaintiff still must identify an error that caused harm and explain how that harm justifies remand. Once again, Plaintiff has not done so. Seventh Circuit case law states that the Court "will not remand a case to the ALJ for further specification where [the Court is] convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). *See also Wilder*, 22 F.4th at 654 ("An error is harmless if, upon examination of the record, the court can predict with great confidence what the result of remand will be." (Internal citation and quotation marks omitted)). Plaintiff does not cite to any evidence in the record suggesting that her migraines or alleged sleepiness would cause her to miss time at work. She does not identify any specific limitation compelled by the record that the ALJ did not, but should have, included. Plaintiff points to no suggestions from physicians that either her migraines or her alleged sleepiness influenced her ability to work or that they resulted in greater limitations than those which the ALJ found in limiting Plaintiff to sedentary work with additional

11

limitations. Thus, any error that the ALJ may have made in omitting further explanation of her consideration of Plaintiff's alleged migraines and hypersomnolence was, at most, harmless.

## IV. Conclusion

For these reasons, Plaintiff's request for remand [Filing No. 11] should be denied. Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 1/5/2023

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email