UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWN M. C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00431-TWP-TAB |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Plaintiff Dawn C. ("Dawn") appeals the Administrative Law Judge's decision denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. Pursuant to 28 U.S.C § 636, the Court referred the matter to the Magistrate Judge (Filing No. 12), who submitted his Report and Recommendation on January 5, 2023, recommending that the decision of the Commissioner be affirmed (Filing No. 16). Dawn timely filed Objections to the Magistrate Judge's Report and Recommendation (Filing No. 17). For the reasons set forth below, the Court **OVERRULES** Dawn's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation **AFFIRMING** the decision of the Commissioner.

### I.     BACKGROUND

An extensive elaboration of the procedural and factual background of this matter is unnecessary, as the parties and the Magistrate Judge have sufficiently detailed the background of

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

this matter in the briefs and the Report and Recommendation.  The Court mentions only those facts that are relevant to this determination.

Dawn protectively filed her application for DIB and SSI on May 13, 2019, alleging August 6, 2018, as the disability onset date.  In her application, she asserted the following impairments: back, hip, pelvic, and knee problems, low thyroid count, lightheadedness, trouble moving legs, iron deficiency, depression, bladder spasms, and right shoulder injury (Filing No. 7-6 at 5).

Dawn's application was denied initially on July 10, 2019, and again on reconsideration on January 13, 2020. She timely requested a hearing on her application, which was held before Administrative Law Judge Carol Guyton ("ALJ") on July 29, 2020, via telephone due to the COVID-19 pandemic. The ALJ issued her decision on August 28, 2020, denying Dawn's application, having determined that she was not disabled. Dawn sought review of the ALJ's decision by the Appeals Council. On January 12, 2021, the Appeals Council granted Dawn's request for review and remanded the ALJ's decision.

A hearing was held on remand before the ALJ on March 30, 2021, via telephone–again due to the COVID-19 pandemic. The ALJ issued her decision on May 5, 2021, denying Dawn's application, having determined that she was not disabled.  Dawn sought review of the ALJ's decision by the Appeals Council.  On January 18, 2022, the Appeals Council denied Dawn's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

Dawn timely filed her Complaint with this Court on March 4, 2022, seeking judicial review of the Commissioner's decision.  On October 20, 2022, the Court issued an order referring the matter to Magistrate Judge Tim A. Baker for a Report and Recommendation.  On January 5, 2023, the Magistrate Judge filed his Report and Recommendation adopting the decision of the ALJ and

Commissioner. Thereafter, on January 19, 2023, Dawn filed timely Objections to the Report and Recommendation.

## II.     LEGAL STANDARD

When the Court reviews the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision, and while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. The Court "must be able to trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. *See* Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions . . . to which timely objections have not been raised by a party." *Sweet v. Colvin*, No. 12-cv-439, 2013 WL 5487358,

3

at *1 (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009)).

## III. DISCUSSION

In her appeal of the ALJ's decision, Dawn advances two primary arguments: (A) the ALJ erroneously assessed her subjective symptoms, and (B) the ALJ erroneously failed to discuss the impact of her migraines and hypersomnolence on her ability to work.

### A. Subjective Symptoms Analysis

Dawn first argues that the ALJ misapplied SSR 16-3p in evaluating her subjective symptoms. Under Social Security Rule ("SSR") 16-3p, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *3–4. "In evaluating a claimant's credibility, the ALJ must comply with Social Security Rule 16-3p and articulate the reasons for the credibility determination." *Karen A.R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019).

An ALJ's credibility finding is generally given considerable deference and only overturned if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Ultimately, the ALJ must offer an explanation that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816. Thus, "[a]s long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

Dawn specifically argues that in assessing her subjective symptoms, the ALJ summarized all of her findings in one paragraph:

> The undersigned finds the above residual functional capacity adequately accounts for the claimant's alleged impairments. The undersigned has considered the claimant's statements regarding the intensity, persistence, and limiting effects of their symptoms in accordance with SSR 16-3p. The claimant reported she is able to sort laundry and go out grocery shopping (Ex. 5E). In her December 2019 consultative exam, the claimant reported she was able to help her daughter get ready for school and do her homework (Ex. 5F). Consideration of the factors set forth in SSR 16-3p, including the claimant's wide range of reported activities from her testimony and function reports, the repeated reports of improved knee pain following her surgery, and the reports of improved pelvic pain following her injections, indicate the reported intensity, persistence, and limiting effects of the claimant's symptoms are inconsistent with record [*sic*] as a whole.

(Filing No. 7-2 at 31). Dawn contends that this analysis improperly fails to consider the qualified ways in which she can perform those activities and inappropriately relies solely on discrepancies between her testimony and the objective medical evidence (Filing No. 11 at 15–23).

The Magistrate Judge concluded that the entirety of the ALJ's decision accurately reflected Dawn's medical history and complaints of pain and was not "patently wrong" (Filing No. 16 at 9–10). The Magistrate Judge also concluded that any alleged error would have been harmless because Dawn had not tied the error to additional work-related limitations that the ALJ should have included in the RFC determination. The Court agrees with the Magistrate Judge on both accounts.

As to the evidence of daily activities, the ALJ should have considered evidence regarding the qualified manner in which Dawn is able to perform those activities. The ALJ cited evidence showing that Dawn is able to "sort laundry," "go out grocery shopping," "help her daughter get ready for school and do her homework" (Filing No. 7-2 at 31). Dawn is correct in her assertion that the ALJ did not consider evidence that Dawn's mother does most of the grocery shopping, that Dawn uses a motorized cart when she does go grocery shopping, and that Dawn's mother and

daughter do most of the household chores (Filing No. 11 at 18). However, this error does not warrant remand. As the Magistrate Judge concluded, the discrepancies between Dawn's testimony about her limitations and her medical records also supported the ALJ's credibility determination (Filing No. 16 at 6).

Dawn argues that an ALJ cannot base her credibility determination solely on objective medical evidence, and contends that both the ALJ and the Magistrate Judge erred by relying on discrepancies between Dawn's testimony and her medical records (Filing No. 17 at 3). Dawn conflates objective medical evidence with medical records. "Objective medical evidence" is defined as "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). "Signs" are "anatomical, physiological, or psychological abnormalities that can be observed, *apart from [a patient's] statements (symptoms)*. Signs must be shown by medically acceptable clinical diagnostic techniques." *Id.* at § (g) (emphasis added). Medical records may contain both "objective medical evidence" and subjective medical evidence, like patient statements.

In her lengthy discussion of Dawn's medical history, the ALJ pointed to both objective medical evidence—like x-rays, diagnoses, and tests—and subjective medical evidence, including statements made by Dawn to her physicians regarding her pain and progress. For example, the ALJ's discussion of Dawn's right rotator cuff surgery, which mentioned an x-ray from the following year, Dawn's report of shoulder pain to her physical therapist, and a range of motion examination, and the ALJ reviewed both objective medical evidence and subjective medical evidence from Dawn's medical records (Filing No. 7-2 at 27).

Similarly, the ALJ discussed both objective and subjective medical evidence with respect to Dawn's left knee surgery in February 2020. *Id.* The ALJ noted that following the surgery, Dawn reported that "she was recovering well from the knee surgery," that "recent knee injections

6

had helped her considerably," and that "her knee pain was steadily improving after her surgery and her mechanical symptoms had been resolved." *Id.*

The Court agrees with the Magistrate Judge that the ALJ thoroughly considered the record evidence, both objective and subjective, regarding Dawn's alleged impairments and reasonably concluded that the records conflicted, at least in part, with Dawn's testimony about the severity of her symptoms. The ALJ's discussion of Dawn's medical history creates a logical bridge between the evidence and the ALJ's conclusion, so it is entitled to deference. *Arnold*, 473 F.3d at 823.

The Magistrate Judge added that even if the ALJ had erred as to the credibility determination, Dawn failed to tie this error to any actual harm (Filing No. 16 at 9–10). The Magistrate Judge similarly concluded that despite the ALJ's failure to consider the side effects of Dawn's medications, Dawn did not show how she was harmed by this omission. *Id.* at 10. He stated Dawn "has not suggested any additional limitations the ALJ should have included because she was still having knee and pelvic pain" and "does not explain how her subjective reports of side effects mandated a finding of disability, nor has she even identified any specific functional limitation that the record demanded and the ALJ omitted." *Id.* at 9–10.

Dawn asserts that "[t]ime off-task is the logical impact" of these conditions. She further argues that the Magistrate Judge should not have faulted her for failing to cite additional work limitations because "[i]t is the ALJ's responsibility to determine a claimant's limitations, not Plaintiff's" (Filing No. 17 at 3–4). Although it was the ALJ's initial responsibility to determine Dawn's work limitations, on appeal "[t]he burden falls on [Dawn] to provide evidence that [her conditions] caused specific limitations affecting her capacity to work, or that any errors affected the outcome of the proceedings." *McCorkle v. Kijakazi*, No. 22-1638, 2023 WL 179983, at *4 (7th Cir. Jan. 13. 2023) (internal citations omitted).

7

Dawn notes that the vocational expert testified at the hearing that if an individual needed unscheduled breaks throughout the day that would cause them to be off-task for twenty percent of the day, or if an individual was absent on an ongoing basis for three days every month, that would preclude full-time employment (Filing No. 17 at 5–6). However, Dawn points to no evidence in the record indicating that her knee or pelvic pain, or the side effects of her medications, would cause her to be off-task or absent on an ongoing basis.

The fact that Dawn suffers from those conditions is not sufficient to show actual harm. "Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment." *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("A person can be depressed, anxious, and obese yet still perform full-time work."); *Tonya B. v. Kijakazi*, No. 21-cv-1234, at *5 (S.D. Ind. Sept. 8, 2022) ("Without any physician record indicating that [claimant] would be off task for any amount of the workday or unable to perform at a competitive speed, due to her visual impairments, the ALJ did not err in not including such a limitation in the visual RFC determination."); *Jamie Y. v. Saul*, No. 19-cv-03040, 2020 WL 4004062, at *8 (S.D. Ind. July 15, 2020) (finding "no apparent conflict between ALJ's conclusions and the omitted evidence" because claimant had failed to provide evidence supporting specific limitations affecting capacity to work, despite offering evidence of presence of severe impairments).

Dawn has failed to offer any evidence showing that her knee or pelvic pain, or her medication side effects, would cause her to be off task or absent from work, or require any specific limitations beyond those imposed by the ALJ in her RFC determination. Remand is therefore not appropriate.

B. **Consideration of Migraines and Hypersomnolence**

Dawn also argues remand is appropriate because the ALJ erred by failing to consider Dawn's migraines and hypersomnolence in making her RFC determination. The Magistrate Judge determined that the ALJ erred by failing to consider this evidence but that the error was harmless. The Court agrees with the Magistrate Judge (Filing No. 16 at 11).

The ALJ referred to Dawn's migraines only twice in her decision. At step two, the ALJ determined, without explanation, that Dawn's migraines were not a severe impairment (Filing No. 7-2 at 24). And in making her RFC determination, the ALJ stated that although Dawn "reported she has frequent headaches," her migraine symptoms were not as severe as alleged because she "reported she is able to sort laundry and go out grocery shopping . . . . [and] help her daughter get ready for school and do her homework" *Id.* at 27. These two passing references to Dawn's migraines do not create a logical bridge between the evidence and the ALJ's conclusions.

However, the Court agrees with the Magistrate Judge that this error was harmless. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). As the Magistrate Judge explained, Dawn was unable to point to any medical source who assessed her with greater work limitations due to migraines or hypersomnolence (Filing No. 16 at 11).

Dawn has identified evidence showing that she suffers from frequent migraines and hypersomnolence, and that absenteeism and time off-work would preclude full-time employment. But she has not identified evidence showing that her migraines or hypersomnolence would cause her to be off-task or absent from work on an ongoing basis. Dawn concedes that there are no

9

physician records indicating that she would miss time at work due to her migraines or sleepiness, and neither her medical records nor her hearing testimony provides that evidence.

Dawn's medical records confirm that she suffers from nearly daily migraines that "feel[] like a hammer" and that she is "bothered by light" (Filing No. 7-34 at 14; Filing No. 7-3 at 13, 18–19). She does not go to the emergency room for her migraines and instead tries to sleep or cover her eyes to treat them (Filing No. 7-3 at 18–19; Filing No. 7-34 at 14). Dawn also testified that the two medications she takes for migraines reduce her migraine pain from a ten, on a ten-point pain scale, down to a seven, although the medications do not prevent her migraines (Filing No. 7-3 at. 13–14; Filing No. 7-34 at 14–16; Filing No. 7-35 at 13–14). For reference, Dawn rated her overall bodily pain, aside from the migraines, as a six out of ten (Filing No. 7-3 at 13–14). Additionally, the evidence indicates that the constant migraine pain Dawn experiences does not prevent her from completing a variety of daily tasks like cooking, sorting laundry, some vacuuming, and grocery shopping. *Id.* at 15–17. Dawn's hearing testimony does not indicate that the limited capacity in which she is able to complete these tasks is a result of her migraines or sleepiness, rather than her limitations with respect to sitting, standing, and walking.

Evidence of the severity of Dawn's migraines and hypersomnolence, by itself, does not warrant remand. The Court cannot simply assume that time off-task or absenteeism are the "logical impact[s]" of these conditions. (Filing No. 17 at 3.) *See Jason R. v. Saul*, No. 19-cv-352, 2020 WL 13555030, at *5 n.8 (S.D. Ind. Oct. 27, 2020) ("The Plaintiff's relevant contentions are largely speculative based on the ways that migraines *may* affect an individual's capacity to work, rather than tied to any evidence of record in this case that identifies such triggers." (Emphasis in original)). "Pointing to a diagnosis and saying it would hinder a claimant's ability to work is not sufficient to establish functional limitations." *Carmelitta W. v. Saul*, No. 19-cv-34, 2020 WL

13558729, at *3 (S.D. Ind. Jan. 17, 2020) (stating claimant had "not met her burden here of establishing specific limitations resulting from her impairment that are supported by the medical records, as opposed to asserting generally that the diagnosis, by definition, establishes possible symptoms and limitations," but remanding decision to ALJ on other grounds).

The lack of evidence showing that Dawn's migraines would have resulted in time off-task or absenteeism makes this case distinguishable from other similar cases that warranted remand. *See, e.g.*, *Moon v. Colvin*, 763 F.3d 718, 723 (7th Cir. 2014) (remanding decision to ALJ for considering of evidence that claimant "need[ed] to remain in bed multiple days per week" due to migraines); *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014) (remanding decision to ALJ for consideration of evidence that claimant's "migraines are debilitating, and cause her to stay in bed much of the day, render her unable to deal with light and sound, and result in a heightened sense of smell that aggravates her nausea and headaches"); *Victoria M. Kijakazi*, No. 20-cv-3125, 2022 WL 1046773, at *3 (S.D. Ind. Mar. 21, 2022) (remanding decision to ALJ for consideration of migraines that caused claimant "to miss work or leave early because of migraines at least once a week during a failed work attempt after her alleged onset date"); *Smith v. Berryhill*, No. 16-cv-2019, 2017 WL 4049245, at *4 (S.D. Ind. Aug. 18, 2017) (remanding decision to ALJ for consideration of migraines that "are accompanied by nausea, vomiting, and blurred vision; and [that] send [claimant] to bed for the rest of the day").

When, as here, the plaintiff "was represented by counsel at the hearing, she is presumed to have made her best case before the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (citing *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)); *see Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is

11

making his strongest case for benefits."). Yet there is no testimony or other evidence indicating if or how often Dawn would be absent or off-task due to her migraines and hypersomnolence, regardless of their severity. Dawn has not satisfied her burden of showing actual harm. The Court concurs with the conclusion of the Magistrate Judge and agrees that the decision of the ALJ should be affirmed.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that there is no error in the Magistrate Judge's Report and Recommendation and therefore **OVERRULES** Dawn's Objections (Filing No. 17). The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation **AFFIRMING** the Commission's decision (Filing No. 16). Final judgment will issue under separate order.

**SO ORDERED**.

Date: 3/22/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kwold@hankeylaw.com

Javitt Adili
Social Security Administration
javitt.adili@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov